# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-3984

_____

International Brotherhood of Electrical     *
Workers, Local Union No. 545,     *
    *
          Plaintiff - Appellee,     *
    *
    *
        v.     *
    *
Hope Electrical Corporation,     *
    *
          Defendant - Appellant.     *


_____

No. 02-3635

_____

Appeals from the United States
District Court for the Western
District of Missouri.

International Brotherhood of Electrical     *
Workers, Local Union No. 545,     *
    *
          Plaintiff - Appellee,     *
    *
        v.     *
    *
Lloyd W. Hope; Hope Electrical     *
Corporation; Hope-Giefer Corporation;     *
Hope Leasing, Inc.; L.W.H. Consulting,     *
Inc.,     *
    *
          Defendants - Appellants.     *

_____

Submitted:  October 22, 2003
Filed:  August 26, 2004
_____

Before RILEY, BOWMAN, and MELLOY, Circuit Judges.
_____

MELLOY, Circuit Judge.

In Case No. 01-3984, Defendant-Appellant Hope Electrical Corporation ("Hope Electrical") appeals the district court's[1] enforcement of a February 2001 arbitration award.  In Case No. 02-3635, an action to hold Hope Electrical, Lloyd W. Hope, and several related corporations jointly and severally liable for the February 2001 arbitration award, Hope Electrical, Lloyd W. Hope, and three related companies appeal from the district court's entry of default judgment as a sanction for their failure to comply with a discovery order.  We affirm.

## I.  Background–Early History and Prior Appeal[2]

In 1996, Plaintiff-Appellee the International Brotherhood of Electrical Workers, Local Union No. 545 ("Local 545"), targeted Hope Electrical with an organizational campaign.  After members of Local 545 applied for, and failed to secure, employment with Hope Electrical, Local 545 filed an unfair labor practices claim before the National Labor Relations Board (the "Board").  To settle this claim,

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

[2]Portions of this background discussion are taken directly from this panel's earlier decision, International Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 293 F.3d 409 (2002) ("Hope I"), without specific attribution.

Hope Electrical agreed to recognize Local 545 as its employees' representative and a regional electrical contractors' association as its own representative. Ultimately, Hope Electrical became a party to a collective bargaining agreement, the First Inside Agreement, that the contractors' association negotiated with Local 545. The term of the First Inside Agreement extended through May 1999.

Hope Electrical became bound under the First Inside Agreement without its workers first having had an opportunity to elect or reject Local 545 as their bargaining unit representative. As such, the First Inside Agreement was a "pre-hire, construction industry agreement" sanctioned by section 8(f) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 158(f). Section 8(f) agreements and the interest arbitration clauses contained therein generally are enforceable against employers notwithstanding the failure of the signatory union to obtain majority approval among eligible workers. Local Union 257, Int'l Bhd. of Elec. Workers v. Sebastian Elec., 121 F.3d 1180, 1185 (8th Cir. 1997).

The First Inside Agreement required Hope Electrical to pay wages according to a defined scale, hire new workers exclusively through Local 545's hiring hall, and categorize workers and their respective duties according to an apprenticeship and work distribution regime. The First Inside Agreement contained an interest arbitration clause. "An interest arbitration clause is one in which the parties agree to arbitrate disputes over the terms of a new collective bargaining agreement in the event of a deadlock." Sheet Metal Workers' Int'l Ass'n, Local 14 v. Aldrich Air Conditioning, Inc., 717 F.2d 456, 456 (8th Cir. 1983).[3]

---

[3]Until the expiration of a section 8(f) agreement, the signatory union is entitled to a presumption of majority status. Sebastian Elec., 121 F.3d at 1185. Further, interest arbitration clauses may survive termination, and employers and eligible workers may be subject to the imposition of at least one undesired "successor" agreement through interest arbitration. Id. at 1185-86. As a protection for employers and employees against the perpetuation of such agreements and the unwanted

Soon after Hope Electrical entered the First Inside Agreement, its workers sought a Board-monitored election regarding Local 545 representation, purportedly to decertify Local 545. Because Hope Electrical failed to pay its workers union wages in accordance with the First Inside Agreement and failed to hire exclusively through Local 545's hiring hall, Local 545 instituted an unfair labor practices charge against Hope Electrical before the Board. Under the Board's blocking charge policy, the Board suspended Board-monitored elections pending resolution of the outstanding unfair labor claims. See, e.g., Briggs Plumbingware, Inc. v. NLRB, 877 F.2d 1282, 1289-90 (6th Cir. 1989); Bishop v. NLRB, 502 F.2d 1024, 1029 (5th Cir. 1974).

Hope Electrical now argues that Local 545 abused the blocking charge policy as a "union tactic" to delay a Board-monitored decertification vote. Local 545 argues that the blocking charge policy worked as intended to prevent a decertification vote from occurring at a time when Hope Electrical had "stacked the deck" against a successful union vote through its refusal to hire exclusively from Local 545.[4] Although Hope Electrical, like Local 545, raised other unfair labor charges before the

---

imposition of multiple generations of successor agreements, this Court has determined that interest arbitration clauses are not enforceable "to perpetuate the inclusion of the [interest arbitration] clause in successive bargaining agreements." Aldrich Air Conditioning, 717 F.2d at 458 (quoting NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252, 543 F.2d 1169, 1170 (5th Cir. 1976)).

[4]Based on the ongoing inability of the workers to secure a decertification vote, Hope Electrical argues that representational issues lie behind all arbitration, district court, and Board proceedings related to this dispute, and the courts at all times relevant to these proceedings should have deferred to the authority of the Board. Following our discussion of the specific issues on appeal, we address the general issue of representation as well as Hope Electrical's argument that a Board decision in a related case established the absence of any enforceable agreement between Local 545 and Hope Electrical.

Board, it is undisputed that Local 545's original unfair labor charge alone was sufficient to invoke the blocking charge policy and prevent Hope Electrical's workers from obtaining a Board-monitored vote at all times relevant to these cases. It appears undisputed that the workers actually employed by Hope Electrical did not desire representation by Local 545. The workers were not hired from the Local 545 hiring hall.

On February 11, 1999, Hope Electrical provided Local 545 with timely notice of an intent not to enter a successor collective bargaining agreement upon termination of the First Inside Agreement. Hope Electrical also provided notice of its withdrawal from representation by the regional electrical contractors' association.[5] Local 545 subsequently and unilaterally instituted interest arbitration, first before a Joint Labor Management Committee and later before the Council on Industrial Relations (the "CIR"), as authorized by the First Inside Agreement. Hope Electrical refused to participate in either arbitration proceeding. On May 18, 1999, while the First Inside Agreement was still in effect, the CIR issued a ruling and directed Local 545 and Hope Electrical to sign and implement a successor agreement, the Second Inside Agreement. A copy of the Second Inside Agreement, imposed upon Hope Electrical by the CIR at Local 545's request, was attached to the CIR's arbitration ruling. The CIR's order specifically stated, "The parties are directed to sign and implement immediately the [Second] Inside Agreement which is attached hereto and hereby made a part of this decision. Sufficient copies of this agreement are to be promptly submitted for approval in accordance with the usual procedure."

---

[5]A party to a section 8(f) agreement cannot unilaterally terminate the agreement other than upon expiration of the term of the agreement. Sebastian Elec., 121 F.3d at 1185. Further, the ability to terminate a section 8(f) agreement upon expiration of its term may be limited contractually. Interest arbitration is one type of contractual limitation upon a party's ability to unilaterally terminate a section 8(f) agreement.

Hope Electrical subsequently refused to sign or abide by the terms of the Second Inside Agreement. Eventually, Local 545 brought an action in the district court under section 301 of the LMRA, 29 U.S.C. § 185, to enforce the arbitration award. On May 30, 2000, the district court entered an order to enforce the arbitration award. In its order, the district court specifically stated:

> that the May 18, 1999 CIR award is confirmed and that defendant is to comply with said award in all respects. It is further [o]rdered that defendant submit to an audit of its business records for the purpose of ascertaining defendant's liability arising from defendant's non-compliance with the [Second] Inside Agreement that defendant was ordered to implement in the CIR award.

In accordance with our prior decision in Aldrich Air Conditioning, 717 F.2d at 458-59, the Second Inside Agreement did not include a unilateral interest arbitration provision. Rather, regarding issues of contract termination or modification, Article I, Section 2(e) of the Second Inside Agreement provided, "By mutual agreement only" the parties "may jointly" submit conflicts for arbitration before the CIR. As such, under the Second Inside Agreement, Local 545 could not force Hope Electrical to enter a third generation inside agreement through unilateral arbitration. Accordingly, the current dispute involves only the First and Second Inside Agreements. The Second Inside Agreement expired on May 31, 2002.

Regarding the arbitration of issues other than contract termination or modification, however, Article I, Section 8 of the Second Inside Agreement provided for the unilateral submission of grievances. Article 1, Section 8 specifically provided, "Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding."

Hope Electrical failed to appeal, or comply with, the district court's May 30, 2000 order that imposed the Second Inside Agreement. Local 545 sought and obtained enforcement orders from the district court on July 7 and 14, 2000, to force Hope Electrical to comply with the May 30, 2000 order. Finally, on August 29, 2000, under threat of contempt sanctions, Hope Electrical signed the Second Inside Agreement and consented to an audit. Hope Electrical subsequently failed to comply in all respects with the Second Inside Agreement or with the May 30, 2000 order. According to Local 545, Hope Electrical continued to hire non-union workers and failed to pay wages as required by the Second Inside Agreement.

Due to Hope Electrical's continued non-compliance, Local 545 filed a series of motions to hold Hope Electrical in contempt. In the third such motion, Local 545 attached a copy of November 14, 2000 charges that Hope Electrical filed with the Board. In these November 14, 2000 charges—filed nearly six months after entry of the May 30, 2000 order (from which Hope Electrical never appealed) and nearly eighteen months after the spring 1999 arbitration rulings—Hope Electrical refuted the validity of the arbitrators' and district court's actions.[6] On November 22, 2000, in response to Local 545's third request to hold Hope Electrical in contempt, the district

_____

[6]Hope Electrical's charges before the Board characterized the following actions by Local 545 as unfair labor practices:

    (c)    Filing lawsuits in Federal Court against Hope attempting to enforce an illegal arbitration award by the CIR; . . .

    (i)    Having a Federal Judge order Hope to submit to an audit of its payroll records for a period not covered by Hope's Contract with the Union; . . .

    (k)    Filing a Court action to have a Federal Judge order Hope to sign an illegal 8(f) contract; . . .

    (s)    Attempting to have Hope held in contempt of Court for not signing the 8(f) contract as ordered by the CIR;

    (t)    Attempting to have Lloyd W. Hope held in contempt of Court for not signing the 8(f) contract as ordered by the CIR . . .

court held Hope Electrical in contempt and assessed a fine at $1000 per day until such time that Hope Electrical complied with the requirements of the contempt order. The district court directed its contempt order towards Hope Electrical and also towards Lloyd W. Hope as an individual. Hope Electrical appealed the contempt order. Lloyd W. Hope did not appeal the contempt order.

Throughout the winter and spring of 2001, Hope Electrical filed a series of motions for relief under Rule 60(b) in which it argued that the May 30, 2000 order was flawed due to a lack of majority approval for Local 545 representation, due to Local 545's ongoing blocking of monitored elections, due to alleged failures by the district court to apply the appropriate legal standards in the enforcement of the arbitration award, and due to alleged "new evidence" that warranted relief from the May 30, 2000 order. The alleged new evidence was the discovery by Hope Electrical that, on January 8, 2001, the International President of the International Brotherhood of Electrical Workers only partially approved the Second Inside Agreement that the arbitrators and district court imposed and that Hope Electrical signed on August 29, 2000. By letter dated March 20, 2001, however, the International President rescinded his earlier objections and approved the Second Inside Agreement in whole.

The district court rejected all of Hope Electrical's Rule 60(b) motions. On June 7, 2002, we affirmed the district court's contempt order as well as its Rule 60(b) rulings. See Hope I. We based our decision on Hope Electrical's failure to appeal the May 30, 2000 order and Hope Electrical's impermissible attempt to use Rule 60(b) as a vehicle to raise arguments that could have been raised below.

## II. Background–Arbitration and Action for Back Wages

While the lower court's contempt proceedings and consideration of Rule 60(b) motions continued throughout late 2000 and early 2001, Local 545 conducted the court-ordered audit of Hope Electrical. Based on the results of the audit, Local 545

sent an October 10, 2000 demand letter to Hope Electrical in which Local 545 alleged that Hope Electrical underpaid workers by a collective total of $186,093.21. Local 545 further alleged that Hope Electrical's failure to hire exclusively from the Local 545 hiring hall resulted in $458,486.26 in lost wages to out-of-work Local 545 electrical workers. Although Hope Electrical alleges that outstanding questions of fact remain regarding certain letters, communications, and meetings related to Local 545's attempt to have Hope Electrical settle these wages and hiring hall grievances, it is undisputed that Local 545 repeatedly attempted to schedule a joint labor-management committee meeting to resolve the grievances. It is also undisputed that Hope Electrical's repeated delays prevented any such meeting from taking place. Ultimately, Local 545 treated the issues as deadlocked and submitted them to the CIR for resolution.

When Local 545 submitted the wages and hiring hall disputes to the CIR, the International President, as stated above, had not yet approved the Second Inside Agreement in its entirety. Rather, the actual contract document that Local 545 submitted to the CIR was a copy of the Second Inside Agreement—the document appended to the earlier, 1999 CIR decision and imposed upon Hope Electrical by the district court on May 30, 2000—on which the International President had stamped numerous sections or subsections "Not Approved."

Hope Electrical does not argue on appeal that it failed to receive notice of the scheduled CIR arbitration. Further, it is undisputed that Hope Electrical failed to notify the CIR that it contested the CIR's jurisdiction to arbitrate the wages and hiring hall grievances or that it would not participate in arbitration. Hope Electrical simply chose not to communicate with the CIR and not to participate in the 2001 CIR proceeding in any manner. When Local 545 appeared for arbitration in February 2001 and Hope Electrical failed to appear, the CIR entered an arbitration award in Local 545's favor for the full amount of the wage demands, $644,579.47 plus attorneys' fees.

In March 2001, Local 545 brought an action in the district court to enforce the arbitration award.  After Local 545 instituted its enforcement action Hope Electrical filed a timely motion to vacate the 2001 CIR award.  Hope Electrical also filed a timely answer in Local 545's enforcement action.

Local 545 then moved for summary judgment.  Hope Electrical filed two separate motions to dismiss Local 545's enforcement action.  The district court determined that Hope Electrical waived any challenges to the CIR's jurisdiction and any substantive challenges to the CIR's 2001 award by failing to participate in the CIR arbitration or challenge the CIR's jurisdiction in front of the CIR.  Accordingly, the district court denied Hope Electrical's motion to set aside the arbitration award and ordered enforcement of the CIR's $644,579.47 award.  Case No. 01-3984 now before this court is Hope Electrical's direct appeal from the district court's judgment that enforced the CIR's 2001 arbitration award.[7]

### III.  Background–Alter Ego Action and Default Judgment

Shortly after the district court entered its 2001 judgment to enforce the CIR's 2001 arbitration award, Hope Electrical formed a series of related companies purportedly to establish a leasing company separate from the electrical contracting firm, establish a consulting company separate from the electrical contracting firm, and establish a company controlled by Lloyd W. Hope's wife to capitalize on situations where female control offered certain advantages in obtaining contracts.  The three new companies were Hope Leasing, Inc., L.W.H. Consulting, and Hope-Giefer Corporation (collectively, the "New Companies").  Local 545 viewed this corporate restructuring as a sham attempt to shield assets from the district court's 2001

---

[7]We originally scheduled arguments in Case No. 01-3984 for 2002, but Hope Electrical filed bankruptcy and we suspended arguments due to the bankruptcy stay. No bankruptcy issues are presently on appeal.

judgment. Accordingly, Local 545 instituted a separate, alter ego action to hold Hope Electrical, Lloyd W. Hope, and the New Companies jointly and severally liable for the 2001 judgment.

In the alter ego action, Local 545 sought documents relevant to the question of whether Hope Electrical and the New Companies followed corporate formalities and maintained separate identities. In particular, Local 545 served discovery requests on October 5, 2001, seeking documents that would reveal, *inter alia*, the distribution of assets between, the source of assets held by, and transactions between Hope Electrical and the New Companies. The discovery requests included up to sixteen interrogatories and sixty-seven requests for production of documents for each defendant. Most of the discovery requests sought information that should have been readily obtainable, easily produceable, and non-privileged. This is especially true for the New Companies because the New Companies had not been in existence for long and could not have had extensive records.

At the same time that Local 545 sought this discovery in its alter ego suit against Lloyd W. Hope, Hope Electrical, and the New Companies, certain union benefit funds (which are legal entities separate from Local 545) sought similar or identical discovery from the same defendants in other litigation. Lloyd W. Hope, Hope Electrical, and the New Companies (which shared an office and a secretary) failed to respond to Local 545's discovery requests. Counsel for Hope Electrical sent a letter to counsel for Local 545 specifically objecting to certain requests as overly broad or not relevant to the alter ego determination. Hope Electrical and Local 545 did not resolve their discovery dispute. Local 545 asked the district court for a telephone hearing under W.D. Mo. Local Rule 37.1(a)(2). On December 13, 2001, following a telephone hearing, the district court issued a written order in which it instructed Lloyd W. Hope, Hope Electrical, and the New Companies to "produce to plaintiff all documents and information identified by plaintiff's counsel during the telephone conference."

Lloyd W. Hope, Hope Electrical, and the New Companies still did not comply with the discovery order. Rather, they petitioned this court for a writ of prohibition or mandamus to stay discovery or for an order to require the district court to hold a hearing to determine the proper scope of discovery. We denied the petition on January 3, 2002. Subsequently, through a series of letters, Local 545 demanded discovery responses and the opportunity to inspect original documents. In return, Hope Electrical provided partial discovery responses. The other defendants did not reply to Local 545's demands with any discovery responses.

In a letter dated January 7, 2002, Local 545 attempted to schedule a meeting to inspect and copy the requested documents. Hope Electrical did not permit inspection. By letter dated January 12, 2002, Hope Electrical sent a CD to counsel for Local 545. The letter claimed the CD contained scanned images of 259 pages of payroll sheets and time cards for 1999. The letter also stated that more documents would be produced that week.

By letter dated January 17, 2002, Hope Electrical sent a replacement CD to Local 545. The letter claimed the replacement CD produced all documents requested in Request for Production No. 7 as well as a partial response to Request No. 33. The letter also stated that a complete response to Request No. 33 would be provided as soon as documents were assembled.

By letter dated January 29, 2002, Hope Electrical sent another replacement CD to Local 545. The letter claimed that the replacement CD produced all documents requested in Request No. 7 as well as a more complete, albeit still partial, response to Request No. 33. The letter stated documents still were being assembled and that more would be sent "within the next week or two."

By letter dated February 25, 2002, Local 545 advised Lloyd W. Hope, Hope Electrical, and the New Companies that it expected all documents to be produced by

March 4, 2002, and that it reserved its right under Federal Rule of Civil Procedure 34 to inspect and copy all requested documents.

By letter dated March 4, 2002, Hope Electrical sent another replacement CD to Local 545. The letter did not identify the requests being answered but claimed the replacement CD produced over 8000 pages of requested documents. The letter stated documents were being assembled and updated CDs would be sent as soon as possible.

By letter dated March 8, 2002, Hope Electrical sent another replacement CD to Local 545. The letter did not identify the requests being answered but claimed the replacement CD produced over 12,000 pages of requested documents. The letter stated documents were being assembled and updated discs would be sent as soon as possible.

By letter dated March 12, 2002, Local 545 again demanded access to inspect and copy original documents. In this letter, Local 545 demanded immediate access. The letter noted that Lloyd W. Hope, Hope Electrical, and the New Companies failed to comply with the December 2001 discovery order, failed to provide complete responses by Local 545's subsequent, March 4 demand, and failed to provide responses to interrogatories. In addition, the letter noted that all discovery responses to date were from Hope Electrical only and that Lloyd W. Hope and the New Companies failed to provide any responses whatsoever.

By letter dated March 14, 2002, Hope Electrical sent two more replacement CDs to counsel for Local 545. The letter claimed that the CDs contained 14,585 pages of scanned documents responsive to Request Nos. 2, 7, 33, 40, 41, 42, and 46. The letter stated that some of the responses would have more documents added and mailed as they were assembled.

Lloyd W. Hope, Hope Electrical, and the New Companies at no time acquiesced in Local 545's request to inspect and copy documents. On April 8, 2002, Local 545 moved for default judgment against all defendants as a sanction for non-compliance with the December discovery order. In the motion, Local 545 notified the court that Hope Electrical provided scanned copies of documents in partial response to Request Nos. 2, 7, 33, 40, 41, 42, and 46, no defendants permitted inspection and copying, and all defendants other than Hope Electrical failed to provide any responses at all. Local 545 specifically noted that the discovery responses that were received were incomplete.

Only Hope Electrical filed a response to the motion. None of the other defendants filed responses nor requested to join in Hope Electrical's response. Even in its lone response, Hope Electrical did not contest the assertion that it failed to comply with the December discovery order. Rather, Hope Electrical argued that the motion for sanctions was premature. Hope Electrical explained that it was scanning and producing documents in accordance with an April 29, 2002 discovery deadline in the separate lawsuits with the benefit funds and that these separate lawsuits involved identical discovery requests. Hope Electrical did not provide to the district court any materials to demonstrate compliance with the December discovery order.

On April 29, 2002, Hope Electrical provided additional discovery responses to Local 545 on a number of CDs.[8] Hope Electrical never offered these CDs to the district court. Local 545 did not have possession of these CDs when it filed the Motion for Default. As described in Local 545's May 6, 2002 reply to the district court, Hope Electrical provided answers to interrogatories that contained boilerplate references to unidentified, allegedly produced documents and did not identify the

---

[8]On appeal, Hope Electrical submitted three CDs to the court that purportedly contain the same content as the CDs produced at the end of April 2002 to Local 545, albeit in a condensed format.

documents as required under Federal Rule of Civil Procedure 33. In addition, Local 545 described the defendants' CD responses to those Requests for Production that the defendants chose to answer as incomplete and unorganized. Finally, Local 545 reiterated to the court that it continued to seek but was not granted an opportunity to inspect and copy original documents. None of the defendants filed any further responses or discovery materials with the district court prior to the district court's entry of default judgment.

On July 26, 2002, the district court entered default judgment against all defendants. The district court found that all defendants refused to permit Local 545 to inspect original documents, Hope Electrical provided incomplete responses, interrogatory answers were non-responsive, and the defendants' failures to comply were willful and in bad faith. On August 5, 2002, counsel for defendants attempted to file a motion to reconsider electronically, but, apparently, was thwarted by difficulties with the district court's electronic filing system. Counsel successfully filed electronic notices of appeal on August 5, and, after the August 5 deadline and after the notices of appeal, successfully filed the motions to reconsider. Because the motions to reconsider were filed late and after the filing of the notices of appeal, the district court found that jurisdiction had transferred to our court and refused to consider the motions.

Case No. 02-3635 is the appeal from the district court's entry of default judgment. All defendants ask this court to accept and consider copies of discovery responses not provided to the district court and to excuse the untimeliness of the motion to reconsider in light of the difficulties experienced with the district court's electronic filing system. Local 545 moved to strike from the appellate record the discovery responses that were not provided to the district court, including three CDs.

During oral arguments we asked counsel for all defendants whether the discovery responses now offered on three CDs for our review were the same

responses provided to Local 545 prior to the entry of default judgment. Counsel for all defendants informed the court that the responses now offered were not provided to the district court but were the same in substance, if not organization, as the responses provided to Local 545 prior to the district court's ruling. Local 545 could neither confirm nor deny the assertion that the CDs provided to our court contained the same data as the CDs provided by defendants on April 29, 2004. It is undisputed that none of the defendants took any action to place the discovery responses before the district court for consideration of the motion for default judgment and that the CDs now offered for our review were not available to Local 545 when it filed its motion for default. In fact, the defendants argue the incredible proposition that the local rules strictly prohibit the submission of discovery materials for the district court's consideration, even in the context of a motion for default judgment as a discovery sanction.[9]

## IV.  Analysis–Case No. 01-3984 Confirmation of the February 2001 Back Wages Arbitration Award

In its brief, Hope Electrical sets forth nineteen separate issues for review. We ordinarily do not address issues that a party raises for the first time on appeal and failed to raise in the district court. Local 2, Int'l Bhd. of Elec. Workers v. Anderson Underground Constr., Inc., 907 F.2d 74, 76 (8th Cir. 1990). Accordingly, we address the arguments that Hope Electrical asserted both on appeal and before the district court in opposition to Local 545's motion for summary judgment or in support of Hope Electrical's own motions—the motion to vacate the arbitration award and the two motions to dismiss Local 545's complaint. Those arguments are as follows:

---

[9]Western District of Missouri Local Rule 26.4 provides, in part, "If relief is sought under any of the Federal Rules of Civil Procedure, copies of only the discovery matters in dispute shall be filed with the Court contemporaneously with any motion filed under said rules."

(1) the district court did not have jurisdiction to enforce the arbitration award because the Federal Arbitration Act, 9 U.S.C. §1 et seq. ("FAA"), governs labor contracts, the FAA requires a written expression of the parties' intent to have an arbitration award confirmed by a court, and such an expression of intent was absent from the Second Inside Agreement;

(2) the CIR exceeded its authority in that a material factual dispute existed regarding whether Hope refused to negotiate and whether there was a deadlock in negotiations;

(3) the CIR exceeded its authority in that it accepted the unilateral submission of the wages grievance even though its own rules require mutual submission where the employer is not a member of a multi-employer bargaining unit;

(4) the CIR exceeded its authority in that the Second Inside Agreement required mutual submission of the wages and hiring hall grievances for arbitration;

(5) the CIR exceeded its authority in that the parties intended Chapter 435 Missouri Revised Statutes to govern the arbitration process, Chapter 435 Mo. Rev. Stats. requires specific wording to make an arbitration agreement binding, and that specific wording was absent from the Second Inside Agreement;

(6) the CIR exceeded its authority in that, when the International President repudiated certain sections of the Second Inside Agreement by stamping them "not approved," he rejected the Second Inside Agreement as a whole and no collective bargaining agreement was in effect between the parties when Local 545 submitted the wages and hiring hall grievances to the CIR;

(7) the claim as to the amount of wages due was mathematically erroneous; and

(8) the out of work union members were either not out of work or were unqualified and not capable of performing the tasks performed by Hope's workers.

Of these issues, all but the first are challenges to the arbitrators' jurisdiction or challenges to the merits of the arbitrator's award. The first is a direct challenge to the courts' jurisdiction. Below, we address this challenge to the courts' jurisdiction, analyze the issue of waiver regarding Hope Electrical's challenges to the arbitrators' jurisdiction and the merits of the arbitration award, and, finally, address those particular challenges we deem not waived.

IV. (A) The District Court's Jurisdiction to Enforce the Arbitration Award

We always have the authority to ensure our own subject matter jurisdiction, and the issue of subject matter jurisdiction is not subject to waiver by the actions of the parties. Accordingly, we address Hope Electrical's first argument, that the district court did not have jurisdiction to confirm the CIR's award pursuant to the FAA because the Second Inside Agreement did not provide that "a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9. This argument is misplaced. Local 545 brought its action to enforce the arbitration award under section 301 of the LMRA, 29 U.S.C. § 185, and not under the FAA. We clearly rejected this argument when we found that section 301 of the LMRA serves as an independent source of federal jurisdiction for district courts to enforce arbitration awards. See Int'l Ass'n of Heat and Frost Insulators & Asbestos Workers, Local Union 34 v. General Pipe Covering, 792 F.2d 96, 98 (8th Cir. 1986) (finding that section 301 of the LMRA authorized the enforcement of an arbitration award under a collective bargaining agreement even though the agreement did not contain the language mandated by 9 U.S.C. § 9).

-18-

Hope Electrical nevertheless argues that the Supreme Court held the FAA applicable to all labor contracts in Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001), and, accordingly, the requirements of 9 U.S.C. § 9 apply in this case. Again, we disagree. In Circuit City, the Court determined only that the exemption for employment contracts set forth in 9 U.S.C. § 1 was limited to the employment contracts of transportation workers. Id. at 119. Circuit City did not involve a labor dispute, but rather, involved the question of whether the FAA authorized a district court to compel arbitration under the arbitration clause in an employment contract between one non-transportation industry employee and a corporate, retail employer. The Supreme Court long ago established that § 301 provides an independent basis for federal jurisdiction to enforce labor arbitration awards. See Textile Workers v Lincoln Mills of Ala., 353 U.S. 448, 451-52 (1957). Nothing in Circuit City suggests a departure from Textile Workers. Further, other courts have noted that Circuit City did not involve a collective bargaining agreement and that section 301 takes precedence over the FAA where conflicts might exists. See Poweragent Inc. v. Elec. Data Sys. Corp., 358 F.3d 1187, 1193 n.1 (9th Cir. 2004) ("Circuit City did not address a [collective bargaining agreement], and we have not considered, and do not here consider, its application to such agreements."); Smart v. Int'l Bhd. of Elec. Workers, Local 702, 315 F.3d 721, 724 (7th Cir. 2002) ("Section 301 is of course more than a jurisdictional and procedural statute; the Supreme Court has held that it is a directive to the courts to create a federal common law of collective bargaining contracts. The Federal Arbitration Act has no particular reference to such contracts and so if there were a conflict between the two statutes we would resolve it in favor of Section 301.").

IV. (B) Waiver and the Justiciability of Hope Electrical's Particular Challenges

Before we address the adequacy of the particular steps that Hope Electrical took to preserve the other challenges that it now presents for our review, we must determine if the particular challenges presented are appropriate for judicial resolution.

To address this issue, we briefly review the relative roles of judges and arbitrators in the resolution of challenges to arbitrators' jurisdiction.

We distinguish between three types of challenges to arbitrators' authority to resolve disputes: jurisdictional challenges of a procedural nature, jurisdictional challenges of a substantive nature, and challenges that relate to the merits of the arbitrators' decision. We make these distinctions because, absent a clear and express contractual grant of authority to arbitrators to decide all issues of arbitrability, we consider certain issues of arbitrability appropriate for arbitrator resolution and other issues of arbitrability appropriate for judicial resolution. See Int'l Ass'n of Bridge, Structural, Ornamental, and Reinforcing Ironworkers, Shopman's Local 493 v. Efco Corp. and Constr. Prods., Inc., 359 F.3d 954, 956 (8th Cir. 2004). This is true even where issues of waiver are not present, as when we address timely motions to compel or enjoin arbitration.

In the context of a motion to compel labor arbitration under a collective bargaining agreement, we recently collected and discussed Supreme Court and Eighth Circuit precedent that described the apportionment of authority between judges and arbitrators to decide such questions of arbitrability. See Id. We restated the conclusion that jurisdictional challenges of a substantive nature are generally for judicial resolution whereas jurisdictional challenges of a procedural nature are generally appropriate for submission to the arbitrators themselves. Id.

Jurisdictional challenges of a procedural nature relate to whether the party who seeks arbitration, and the arbitrators themselves, abided by the procedural safeguards set forth in the collective bargaining agreement and in the rules of the arbitral body. Id. at 955-56 (labeling as "procedural arbitrability issues" a party's failure to adhere to "procedural prerequisites set forth in a collective bargaining agreement's grievance and arbitration clauses," and stating, "Procedural arbitrability issues . . . include 'allegation[s] of waiver, delay, or a like defense to arbitrability'") (quoting Moses J.

-20-

Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983)); see also Auto., Petroleum & Allied Indus. Employees Union, Local No. 618 v. Town & Country Ford, Inc., 709 F.2d 509, 514 (8th Cir. 1983) (calling a notice issue a matter of procedural arbitrability for arbitrator resolution). Jurisdictional challenges of a substantive nature, on the other hand, are generally for the courts to resolve and relate to "two gateway questions of 'arbitrability,'" namely, the underlying issues of contract interpretation necessary to determine whether the parties are subject to a valid contract that calls for arbitration, and whether the contract, in fact, authorizes the arbitrators to decide the substantive issue submitted for resolution. Shopman's Local 493, 359 F.3d at 956; see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-46 (1995) (holding that it is the role of the courts to determine whether parties are bound by valid contracts that call for arbitration); AT&T Techs., Inc. v. Comm. Workers, 475 U.S. 643, 649 (1986) (holding that it is also the role of the courts to determine whether a valid arbitration agreement applies to the subject matter of the issue submitted for arbitration, unless the parties have unmistakably agreed otherwise); United Steel Workers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582-83 (1960) ("[T]he judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made."). Here, the Second Inside Agreement does not unambiguously grant the arbitrators the authority to decide such substantive jurisdictional issues. Accordingly, the court rather than the CIR is the proper authority to hear Hope Electrical's substantive jurisdictional challenges.

As demonstrated in Shopman's Local 493, we refuse to address issues of procedural arbitrability even in the context of a motion to compel, and, instead, defer to the authority of the arbitrators to decide such issues. Shopman's Local 493, 359 F.3d at 955 (holding that a district court improperly decided the consequences of "one party's failure to adhere to the procedural steps that were set forth in the parties' collective bargaining agreement as prerequisites to arbitration," and remanding with

instructions to enter judgment compelling arbitration of the procedural jurisdictional challenge). Accordingly, we cannot address procedural challenges to arbitrability after-the-fact, as Hope Electrical requests in the current case, where arbitration has occurred and the party opposed to arbitration failed to raise the issues of procedural arbitrability with the arbitrators.

Importantly, Shopman's Local 493 did not set forth a new statement of law. Rather, it was clear from longstanding precedent of our circuit as well as the Supreme Court that issues of procedural arbitrability must be submitted to the arbitrators themselves for resolution. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964); Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 748-49 (8th Cir. 1986). Accordingly, whether we apply a theory of waiver or merely recognize the fact that arbitrators and not judges are empowered to decide such issues, we refuse to address Hope Electrical's procedural challenges to arbitrability. These challenges include the second, third, and fourth arguments set forth above, namely, that the parties had not deadlocked in their negotiations regarding the wages and hiring hall grievances[10], that the arbitrators violated their own internal rules by accepting the unilateral submission of a case that involved an employer who was not a member of a multi-employer group, and that the contract required mutual submission of the wages and hiring hall grievances.[11]

---

[10]Even if we were to characterize the challenge regarding deadlock as a substantive rather than procedural jurisdictional challenge that Hope Electrical did not waive, we would find that challenge to be without merit. No reasonable jury could reach any conclusion other than deadlock given Hope Electrical's foot-dragging and consistent refusal to negotiate.

[11]Even if we were to characterize the contract-based challenge regarding unilateral vs. mutual submission as a substantive jurisdictional challenge that Hope Electrical did not waive, we would find the challenge to be without merit. The Second Inside Agreement contained two separate arbitration clauses. The first

We find it appropriate to characterize two of the remaining challenges, arguments five and six, as substantive jurisdictional challenges to arbitrability. Argument five requires identification of the statutory source of the court's authority and asks not whether the parties executed procedural prerequisites, but rather, whether the underlying agreement itself was sufficient to authorize arbitration. The sixth argument requires that we determine one of the "gateway questions of 'arbitrability,'" namely, whether the parties had a valid arbitration agreement. See Shopman's Local 493, 359 F.3d at 956. Because substantive procedural challenges such as these are appropriate for judicial resolution, we may consider these challenges, if properly asserted and not waived.

---

arbitration clause, contained in Article I, Section 2(e), required joint submission of disputes related to the termination or modification of the Second Inside Agreement. See Second Inside Agreement, Art. I, Sec. 2(e) ("By mutual agreement only, . . . may jointly . . . submit the unresolved issues to the Council on Industrial Relations . . . for adjudication"). The present wages and hiring hall disputes, however, have nothing to do with interest arbitration, contract termination, or contract modification. The present disputes are grievances concerning noncompliance as revealed through the court-ordered audit and as alleged by Local 545. Accordingly, a different arbitration provision of the Second Inside Agreement controls the wage dispute. That other provision, Article I, Section 8 of the Second Inside Agreement, provides, "Should the Labor-Management Committee fail to agree or to adjust any matter, such *shall then be referred to the Council on Industrial Relations* for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding." (Emphasis added).

When, in 2001, Hope Electrical refused to attempt to resolve the wages and hiring hall issues revealed by the audit by refusing to participate in the Labor Management Committee, Hope Electrical caused the Labor-Management Committee to "fail to agree or to adjust" the matter. Accordingly, the Second Inside Agreement clearly mandated submission of the issue to the CIR. In pressing this argument, Hope Electrical ignores the distinction that the Second Inside Agreement draws between interest and grievance arbitration.

Arguments seven and eight, namely, that the calculation of wages involved mathematical error and that the allegedly out-of-work union members were not qualified or not out of work, clearly are challenges to the merits of the arbitrators' award. These challenges are not attacks on the arbitrators' jurisdiction or the jurisdiction of the court. Hope Electrical entirely failed to present arguments on these issues to the arbitrators themselves. Accordingly, we find that Hope Electrical waived these merit-based challenges.

Regarding such merit-based challenges, our review is highly deferential. Walsh v. Union Pacific R.R. Co., 803 F.2d 412, 414 (8th Cir. 1986). We refuse to enforce arbitration awards only where the awards do not draw their essence from the parties' underlying agreements, and "in determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts resolved in favor of the arbitrator's award." Id.; see also Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, 706 F.2d 228, 230-31 (8th Cir. 1983) (en banc). Where the awards do not draw their essence from the parties' underlying agreements, the arbitrators, in effect, acted arbitrarily and dispensed their "own brand of industrial justice" or acted outside the scope of their contractual authority. Amalgamated Transit Union, Local 1498 v. Jefferson Partners, 229 F.3d 1198, 1200 (8th Cir. 2000) ("A federal court reviews an arbitration award only to see whether the award draws its essence from the collective bargaining agreement and is not merely the arbitrators' own brand of industrial justice.") (internal quotations and citations omitted). We refuse to enforce arbitration awards under such circumstances because, when the award is not derived from the essence of the contract, we cannot conclude that the parties actually agreed to arbitrate disputes regarding the subject matter of the award. See United Steel Workers, 363 U.S. at 582-83 (stating that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit"). Such extra-contractual awards, however, are rare, and we do not refuse to enforce arbitration awards merely because a party may be able to identify some mistake that the

-24-

arbitrators made in the resolution of a dispute concerning arbitrable subject matter under the agreement. See United Elec., Radio and Mach. Workers of America, Local 1139 v. Litton Microwave Cooking Prods., Litton Sys., Inc., 704 F.2d 393, 396-97 (8th Cir. 1983) ("[A] mere error in the determination of a factual issue is not sufficient to disturb an arbitrator's award.").

This highly deferential level of review places the merits of arbitrable issues squarely in the province of the arbitrators themselves and reflects a congressional desire to promote efficient resolution of industrial disputes. See United Steel Workers, 363 U.S. at 578-79 ("The present federal policy is to promote industrial stabilization through the collective bargaining agreement. A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement."). To the extent that a particular issue is arbitrable, then, a party cannot refuse to participate in arbitration or fail in arbitration to raise a particular argument concerning the merits of the grievance and later seek judicial resolution of that same issue. In other words, if a party who contests the merits of an arbitration award in court fails to first present the challenges on the merits to the arbitrators themselves, review is "compressed still further, to nil." Dean v. Sullivan, 118 F.3d 1170, 1172 (7th Cir. 1997).

We now turn to the question of whether Hope Electrical took adequate steps to preserve arguments five and six, the two jurisdictional challenges of a substantive nature. Hope Electrical did not participate in arbitration, provide notice to the arbitrators of a challenge to their jurisdiction, or move to enjoin arbitration. Rather, Hope Electrical waited until the arbitrators issued their written award and then filed a timely motion to vacate that award. The parties dispute whether this alone is sufficient to preserve a jurisdictional challenge for judicial review.

In Local Union No. 36, Sheet Metal Workers of America v. Atlas Air Conditioning, 926 F.2d 770 (8th Cir. 1991), we described the methods by which a

-25-

party opposed to arbitration could challenge arbitrators' authority. We stated that the party opposed to arbitration could (1) object to the arbitrators' authority, refuse to argue the arbitrability issue, and proceed to the merits of the agreement; (2) seek declaratory or injunctive relief from a court prior to commencement of arbitration; or (3) notify the arbitrators of a refusal to arbitrate altogether. Id. at 771-72 (applying Franklin Elec. Co. v. Int'l Union, UAW, 886 F.2d 188, 191-92 (8th Cir. 1989)). These three methods all place arbitrators on notice of challenges to their jurisdiction. Local 545 seizes upon this portion of Atlas Air Conditioning to assert that notice to arbitrators and opportunity for arbitrators to address the issue of their own jurisdiction are necessary in order to preserve jurisdictional challenges.

We also said, however, that the party opposed to arbitration "should have notified the [arbitrators] of its refusal to arbitrate *or* brought an action to vacate the award, alleging the [arbitrator's] lack of jurisdiction, to preserve its defense." Id. at 772 (emphasis added). We concluded, "We agree with the district court that [the party's] objection to the arbitration award was not timely raised before the [arbitrators] *or in a motion to vacate*, and thus was waived." Id. (emphasis added). Hope Electrical seizes upon this latter portion of Atlas Air Conditioning, which discusses, in the alternative, notice to arbitrators and motions to vacate. Accordingly, Hope Electrical argues that a timely motion to vacate serves as an independent, fourth method for preserving a challenge to the arbitrators' jurisdiction. Local 545, on the other hand, argues that this language merely describes an avenue for presentation of the jurisdictional issue to the courts and that preservation before the arbitrators themselves remains necessary. It is Local 545's position, then, that the timely filing of a motion to vacate is not an independent method to preserve a jurisdictional challenge, but rather, is merely the second step of the third method described above such that the right to file a motion to vacate is dependent upon first notifying the arbitrators of an intention not to arbitrate.

-26-

The facts in <u>Atlas Air Conditioning</u>, like the facts in the present case, involved an employer who entirely failed to communicate with the arbitrators or participate in arbitration initiated by a union. There, when the employer failed to move to vacate the arbitration award and raised the issue of jurisdiction only as a defense to the union's motion to confirm the arbitration award, we held that the employer failed to preserve the issue of jurisdiction for review. We held specifically that a wholesale refusal to participate in arbitration coupled with a failure to expressly notify the arbitrators of this refusal served as a waiver of the right to raise a jurisdictional argument *as a defense* in response to a motion to enforce a resulting arbitration award. <u>See</u> <u>id.</u> ("Atlas could not sit back with impunity until faced with a motion for summary judgment in federal district court."). On the facts of <u>Atlas Air Conditioning</u>, then, waiver was clear. The employer sat on its rights not only throughout arbitration, but also during the time permitted for the filing of motion to vacate with the court.

Our facts, while sharing the lack of notice to arbitrators and the refusal to arbitrate, differ from <u>Atlas Air Conditioning</u> in a material respect. In the present case, Hope Electrical did timely file a motion to vacate the arbitration award. We agree with Hope Electrical that the timely filing of a motion to vacate adequately preserved and raised the substantive jurisdictional challenges. Although we did not make the rationale clear in <u>Atlas Air Conditioning</u>, our repeated reference to a timely motion to vacate was clear. We did not state that a party must provide notice *and* file a timely motion to vacate. Rather we said a party may provide notice *or* file a timely motion to vacate. Accordingly, we are bound to follow the clear language of <u>Atlas Air Conditioning</u> and permit the timely filing of a motion to vacate as an alternative means for preserving an argument related to an issue of substantive arbitrability notwithstanding the lack of notice before the arbitrators.

Our decision in this regard finds further support in the cases discussed above that distinguish between jurisdictional challenges of a substantive and a procedural nature. Because jurisdictional challenges of a substantive nature do not fall under the

authority of the arbitrators, there is no reason to require submission to the arbitrators. Timely raising the issue before the court in a motion to vacate should suffice. Atlas Air Conditioning recognizes this fact.

Our holding, of course, is limited to the facts of this case. In a situation where the parties' collective bargaining agreement clearly apportions to the arbitrators not only the authority to resolve the merits of a grievance, but also the power to resolve underlying issues of arbitrability, there is not a similar rationale to excuse a party's failure to first offer the arbitrators themselves an opportunity to address the issue of arbitrability. See Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 851 n.5 (8th Cir. 2003) (citing AT&T Tech in the context of a tribal gaming management contract dispute and stating, "[t]he question of arbitrability itself is an issue for the court *unless the parties have unmistakably agreed otherwise*") (emphasis added); AT&T Tech., 475 U.S. at 649 ("[W]hether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). Where, as in the present case, the underlying agreement does not grant arbitrators the authority to decide jurisdictional issues, it would be a harsh result to hold jurisdictional challenges waived by a failure to present the jurisdictional issue to the arbitrators. At least in this case with no contract language expressly granting arbitrators the authority to decide substantive jurisdictional challenges, then, presentation and preservation of the issue before the courts is sufficient because only the courts are empowered to decide the issue of arbitrability under these circumstances.

Notwithstanding our conclusion, it remains risky and ill-advised to fail to register an objection to arbitration at every possible step, fail to seek declaratory or injunctive relief, or fail to participate in arguments on the merits of the grievance. An

appearance before an arbitration panel for the limited purpose of contesting jurisdiction or to participate on the merits while preserving an objection to jurisdiction, does not confer jurisdiction. In the event a court later validates the arbitrators' jurisdiction, a prior failure to participate in arbitration on the merits (after lodging an objection to jurisdiction) can result in waiver of the only opportunity to present arguments and evidence regarding the merits of the grievance. This is true not only in the context of labor arbitration under section 301 but also of arbitration under the FAA. Because we have held that a motion to compel arbitration is permissive rather than mandatory, little remedy is available after-the-fact to a party who responds to a call to arbitrate with silence and inaction. See Kanmak Mills, Inc. v. Society Brand Hat Co., 236 F.2d 240, 252 (8th Cir. 1956).

IV. (C) Arbitrators' Jurisdiction

Turning to the merits of the substantive jurisdictional challenges, we first address argument five, Hope Electrical's assertion that the Missouri Arbitration Act controls and requires specific notice language in an arbitration agreement to make arbitration binding. See Mo. Rev. Stat. 435.460. This argument fails because, as we have previously recognized, Missouri's own courts refuse to apply this provision "'to defeat the arbitration provision of a contract [that] is within the coverage of [a] federal statute.'" Anderson Underground Constr., Inc., 907 F.2d at 76 (quoting Bunge Corp. v. Perryville Feed and Produce, 685 S.W.2d 837, 839 (Mo. 1985) (en banc)).

Regarding the sixth argument, the issue of repudiation, Hope Electrical argues that when Local 545 submitted the wages grievance to the CIR, Local 545 presented to the CIR a copy of the Second Inside Agreement on which the International President had stamped various sections "not approved." The Second Inside Agreement, near the signature block, stated, "SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW." Accordingly, Hope Electrical argues, the International President's partial disapproval operated as a failure to meet

a condition precedent such that the contract was not in effect and no obligations existed at the time Local 545 submitted the wages issue for arbitration.

Hope also appears to argue that, by actually submitting the "partially disapproved" version of the contract to the CIR, Local 545 somehow affected the issue of arbitrability. To the extent that Hope Electrical's arguments relate to the fact that the particular copy of the Second Inside Agreement submitted to the CIR was stamped "disapproved," the arguments fail. We do not attach any relevance to the particular document that Local 545 submitted to the CIR. Because Hope Electrical never raised the issue of jurisdiction before the CIR, Hope Electrical never forced the CIR to assess its own authority under any particular document. As explained above, all that Hope Electrical did to preserve the issue of arbitrability/arbitrators' jurisdiction was file a motion to vacate. Accordingly, our concern, and the relevant inquiry, is not whether the document submitted to the CIR demonstrated arbitrability of the wages grievance, but rather, whether the legal relationship between the Local 545 and Hope Electrical, as embodied in the Second Inside Agreement that the district court specifically ordered to be implemented in May 2000, actually authorized the arbitration that occurred. We believe the clear answer to this question is yes.

Because the rights and obligations under the Second Inside Agreement were not merely contractual in nature, but were the subject of the district court judgment that specifically ordered implementation of the Second Inside Agreement, the International President's purported partial repudiation was a meaningless act. The CIR appended the Second Inside Agreement to its 1999 ruling and specifically ordered Hope Electrical "to sign *and implement*" the attached Second Inside Agreement. (Emphasis added). In the May 30, 2000 order, the district court stated "that the May 18, 1999 CIR award is confirmed *in all respects*." (Emphasis added). In addition, the district court ordered the audit to determine Hope Electrical's compliance with the Second Inside Agreement, thereby clearly expressing the result that the Second Inside Agreement was and had been in force and effect since its

effective date. In short, the district court's May 30, 2000 order established the enforceability of the Second Inside Agreement and precludes Hope Electrical's arguments to the contrary.

Further, in light of the fact that Local 545 repeatedly sought and received rulings from the district court to implement the terms of Second Inside Agreement as specifically appended to the earlier CIR ruling, any right that Local 545 might have at one time harbored regarding a requirement for approval by the International President was waived. The requirement for approval by the International President, like the requirement for signatures, fell away when the parties' obligations under the Second Agreement changed from mere contract obligations and became court-imposed duties. The fact that Local 545 mistakenly believed approval remained necessary—and sought approval from the International President after May 2000—in no way bears upon the parties' obligations under the May 2000 order. In short, the parties were not simply under a contractual obligation to arbitrate, the duty to arbitrate was part and parcel of the district court's May 30, 2000 order as well as its subsequent enforcement orders.

Because we reject these two arguments related to substantive arbitrability, we affirm the district court's enforcement of the 2001 CIR award.

V. Analysis–Default Judgment as a Discovery Sanction in the Alter Ego Action

We review the district court's imposition of discovery sanctions for abuse of discretion. Chrysler Corp. v. Carey, 186 F.3d 1016, 1019 (8th Cir. 1999). This standard "applies to the decision to impose a sanction, the nature of the sanction imposed, and the factual basis for the court's decision." Id. In reviewing the district court's imposition of discovery sanctions, we consider "an evasive or incomplete disclosure, answer, or response . . . to be . . . a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). Further, when we review the district court's bad faith

-31-

determination under Federal Rule of Civil Procedure 37, we consider all of the evidence and circumstances that tend to provide a "complete understanding of the parties' motivations" including "a party's actions in a related case." Smith v. Smith, 145 F.3d 335, 344 (5th Cir. 1998).

When the sanction imposed is default judgment and the striking of defendants' answers, our review is "more focused" due to the severity of the sanction and the deprivation of the defendants' opportunity to be heard on the merits. Chrysler Corp., 186 F.3d at 1020; see, e.g., Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 993 (8th Cir. 1975). Nevertheless, if default judgment is in the range of acceptable sanctions, we do "not substitute our own judgment for that of the district court even though we may have chosen a different sanction had we been standing in the shoes of the trial court." Chrysler Corp., 186 F.3d at 1020; see also, Nat'l Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976).

As to Lloyd W. Hope and the New Companies, it is clear that the district court's decision to impose sanctions, and the district court's choice of sanctions, were not abuses of discretion. Given the opportunity to respond to Local 545's motion, these defendants chose not to do so. It is not an abuse of discretion to grant an unopposed motion for default judgment seven months after the entry of a discovery order and six months after a circuit court's denial of a request for mandamus where the defendants received fair opportunity to contest allegations of discovery failures and where the defendants chose not to do so.

The failure to respond or join in Hope Electrical's response makes default judgment particularly appropriate in the context of this case. Although Lloyd W. Hope and the New Companies faced a motion for default judgment *on the issue of their status as mere alter egos of Hope Electrical*, these entities and their attorney, incredibly, assumed that the court would treat them, along with Hope Electrical, as one entity for the purpose of resisting the motion. Because the alleged alter egos'

own failures before the district court demonstrate a failure to maintain separate identities, it was not an abuse of discretion to grant the unresisted motion and impose alter ego liability. See Insurance Corp. of Ireland, LTD v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982) (applying the requirement of Rule 37(b)(2) that sanctions be "just" and determining that sanctions must also "be specifically related to the particular 'claim' which was at issue in the order to provide discovery").

Finally, as to Hope Electrical, which did resist the motion, we find no abuse of discretion in the district court's ruling. Local 545 repeatedly, and at each stage of this discovery dispute, requested access to exercise its right to examine Hope Electrical's records. Hope Electrical did not object on the basis of privilege or request any protective order. Rather, Hope Electrical simply objected on the basis that the discovery requests were too burdensome and the motion for default was premature. Such objections are misplaced for three reasons. First, our review of the requests (submitted by Local 545 to the district court in an appendix to its motion) reveals that the requests sought information clearly relevant to the broad inquiry of alter ego status. Second, the fact that Local 545 at all times sought entry to inspect records belies Hope Electrical's claims as to the overwhelming burden that Local 545's requests purportedly imposed. Simply put, Hope Electrical chose to deny Local 545 access to inspect records under Rule 34 and chose to provide partial discovery responses under a labor intensive method of production. Finally, a general allegation as to the burdensome nature of a discovery request is not available as an excuse to avoid the imposition of sanctions. See Fed. R. Civ. P. 37(d) ("The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).").

As noted above, the district court must consider all of the evidence and circumstances that tend to provide a "complete understanding of the parties' motivations" including "a party's actions in a related case." Smith, 145 F.3d at 344.

-33-

Here, those circumstances include Hope Electrical's dilatory conduct through years of litigation, refusal to abide by court orders, refusal to participate in negotiations prior to arbitration, refusal to participate in arbitration, refusal to cooperate in discovery even after having been ordered to do so by the district court, and Hope Electrical's failure to raise any genuine resistance to the motion. Before the district court, in resistance to Local 545's motion, Hope Electrical filed a three page document in which it argued only that: (1) the motion was premature, (2) the defendants were busy preparing discovery responses for litigation with the benefit funds in accordance with a discovery order in those cases, (3) Hope Electrical would submit tens of thousands of pages of documents to Local 545 on the same dates as the deadline in that other case, and (4) Hope Electrical would like the district court to delay ruling on the motion. After Hope Electrical produced partial responses to Local 545 on that date, Local 545 notified the court of the inadequacy of the responses. Still, Hope Electrical failed to contest Local 545's assertions or provide for the court any evidence whatsoever to suggest that it had, in fact, complied with the December discovery order.

Hope now argues that the district court erred by granting default judgment without examining the untimely discovery responses. Hope Electrical does not, however, suggest how the district court could have examined those responses or why the district court erred in relying on Local 545's characterization of those responses when Hope Electrical not only failed to demonstrate its compliance to the district court or provide discovery materials to the district court, but failed even to contest Local 545's assertion that compliance was inadequate. Here, Hope Electrical had ample opportunity to contest the motion for default judgment and failed to do so. Based on the information available to the district court at the time of its decision to enter default judgment, there was no abuse of discretion.[12]

---

[12]Also before the court is Local 545's motion to strike from the appellate record those portions of the materials defendants submitted on appeal but failed to submit

-34-

## VI. Refusal to Consider Hope Electrical's Motion to Reconsider

Hope Electrical, Lloyd W. Hope, and the New Companies argue that the district court improperly refused to consider their untimely Motion to Reconsider because, had the district court's electronic filing system been working properly, their Motion would have preceded the Notice of Appeal and been timely. We review the district court's decision not to excuse the untimeliness of the filing for abuse of discretion. Although an electronic filing system was available and purportedly not working properly, nothing prevented counsel for these defendants from manually filing the Motion to Reconsider rather than electronically filing a Notice of Appeal and divesting the district court of jurisdiction prior to the actual filing of the Motion to Reconsider. Accordingly, it was not an abuse of discretion for the district court to refuse to consider August 5 as a constructive filing date for the Motion to Reconsider.

Further, even if we were to conclude that the district court erred when it failed to exercise jurisdiction over the Motion to Reconsider, our own review of that motion reveals that it contains evidence not previously submitted to the district court and that this evidence was available and could have been submitted prior to entry of the district court's underlying judgment. Further, it contains arguments that could have been made prior to the district court's judgment. Accordingly, even if the district

---

to the district court. We grant that motion. The record on appeal consists of "the original papers and exhibits filed in the district court." Fed. R. App. P. 10(a). Local 545 did not have the materials that Hope Electrical now submits when Local 545 filed its motion for default. Accordingly, we do not attribute the absence of these materials from the district court record to Local 545. Hope Electrical asked and received time to produce these materials to Local 545 notwithstanding its history before the district court. The only argument Hope Electrical raises as to why it failed to present these materials to the district court is the untenable belief that the local rules prohibited the submission of discovery materials for the court's consideration in the resolution of a discovery dispute involving those very materials. We do not believe this argument merits further discussion.

court had considered the motion, we find nothing in the motion that would have merited relief.

The judgments of the district court are affirmed.

_____