**TEAMSTERS LOCAL UNION NO. 61, affiliated with the International Brotherhood of Teamsters, AFL–CIO, Appellant,**

v.

**UNITED PARCEL SERVICE, INC., Appellee.**

No. 00–7239.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 2001.

Decided Dec. 7, 2001.

Jonathan G. Axelrod argued the cause for the appellant.

Edward P. Lynch argued the cause for the appellee. William J. Kilberg and Lauren S. Goodman were on brief. Eugene Scalia entered an appearance.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Teamsters Local Union No. 61 (Local 61) seeks reversal of the district court's grant of summary judgment to United Parcel Service, Inc. (UPS), affirming two

rulings of the Atlantic Area Parcel Grievance Committee (Committee), a joint management-labor panel created to resolve UPS employee grievances. In resolving a discharge grievance brought by employee Mark Thompson, the Committee decided on January 20, 1999 that the case could proceed to the merits; on February 16, 1999 it upheld Thompson's discharge. In district court, Local 61 argued that the two decisions were invalid because each was made absent a quorum. Finding that the Committee's impartial arbitrator had the authority to decide to proceed to the merits and that the Committee could decide the merits in the absence of the union Committee members, the district court held that Local 61 did "not meet the substantial burden required to vacate the arbitration decision" and it granted UPS's motion for summary judgment. Joint Appendix (JA) 255. We agree and therefore affirm the district court's grant of summary judgment.

## I.

Local 61, an unincorporated labor organization, challenged in district court the Committee's decision to affirm the discharge of Mark Thompson, a UPS package pickup and delivery driver. Local 61 and UPS are bound by collective bargaining agreements known as the National Master United Parcel Service Agreement (NMA) and the Atlantic Area Supplemental Agreement (Supplement). The agreements mandate that if a grievance cannot be resolved on the job by management, it must be submitted to the Committee for arbitration. *See generally* Supplement, Article 49, section 2. The Committee meets monthly for a three-day period. *See* Supplement, Article 49, section 4(b). Each monthly Committee is to consist of an equal number of representatives from management and the union—no fewer than two and no more than three members each. *See* Supplement, Article 49, section 2(e). The Supplement requires in a discharge or suspension case that an "impartial arbitrator" serve as the fifth or seventh member and further provides that he "shall render a bench decision on [sic] all deadlocked cases." Supplement, Article 49, section 4(c).

The January 1999 Committee designated to consider the Thompson grievance consisted of seven members—three management members, three union members and the impartial arbitrator, Joseph Sharnoff. Shortly after the January 19 hearing began, Local 61 questioned the Committee's authority to hear the case in view of an alleged agreement between the parties that discharge cases involving productivity were not to be resolved by arbitration. Raising a point of order,[1] Local 61 argued that UPS was precluded from defending Thompson's discharge on the ground that he had failed to meet production standards. The Committee then considered the issue in executive session. During the session, one management member moved to deny Local 61's point of order. Before the motion was seconded, however, the three union members left the room. They did not return that day.

The Committee reconvened on January 20, recommenced its executive session and resumed discussions regarding the productivity issue. Once again a management member moved to deny the point of order. The motion was seconded but, once again, the three union members left the room before a vote could be taken. When the arbitrator's efforts to get the three to return were unsuccessful, he ruled that their

---

1. A point of order, in Committee parlance, appears to be the arbitration equivalent of an objection in a trial court proceeding. *See,* *e.g.,* Br. of Appellant at 6 (describing Local 61's productivity point of order); Br. of Appellee at 7 (same).

absence amounted to three votes to uphold Local 61's point of order and to dismiss the Thompson grievance on the basis that it involved productivity. The three management members then voted to deny the productivity point of order, creating a 3–3 deadlock. The arbitrator broke the deadlock by voting to deny the point of order and to proceed to the merits.

When the Committee reconvened on January 21 to hear the merits, two of the three union Committee members refused to participate in the hearing and remained instead in an adjoining room. Local 61 then raised a point of order that there was no quorum. The arbitrator again attempted to get the union members to participate and again he failed. Upon returning to the hearing room, the arbitrator stated that "we do not have, to my view, a properly constituted panel ... [b]ecause there are two [u]nion members absent, for whatever reason." JA 48. He recommended that "we proceed to put the record on tape ... [a]nd at such point as everybody's finished stating what their positions are we'll proceed, I guess, with however [UPS] determines that we can proceed." JA 48. UPS then raised a point of order asserting that the union Committee members' refusal to proceed violated Article 7 of the NMA, which provides in part that "[t]he [u]nion agrees it will not unreasonably delay the processing of [discharge or suspension] cases." NMA Article 7. UPS threatened to remove Thompson from the payroll but the remaining union Committee member objected that doing so would violate both the NMA and the Supplement. The Committee did not rule on the Article 7 point of order before adjourning.

A different five-member Committee convened on February 16 with two management members, two union members and the same arbitrator in attendance. When the Committee called the Thompson case, one union member refused to participate.

Local 61 again raised a point of order that there was no quorum, although four of the five Committee members (two management members, one union member and the arbitrator) remained present. In executive session, the Committee denied Local 61's point of order. Local 61 then stated that it would not participate any further or be bound by any Committee decision, again insisting—in spite of the Committee's ruling to the contrary—that there was no quorum. When UPS began presenting its case, the remaining union Committee member left the hearing, echoing Local 61's objection that there was no quorum. After UPS's presentation, "the Panel ruled in favor of the Company," JA 54, and upheld Thompson's discharge, JA 120.

Local 61 sought in district court to vacate the Committee's decisions, arguing that both the January 20 decision to proceed and the February 16 decision on the merits were invalid because they were made without a quorum. On September 7, 2000 the district court granted UPS's motion for summary judgment.

**II.**

Our review of a district court's decision on a summary judgment motion is *de novo*. *See Shields v. Eli Lilly & Co.*, 895 F.2d 1463, 1466 (D.C.Cir.1990) ("Since pretrial summary judgment decisions are rendered exclusively on the basis of a 'paper' record, an appellate court is equally well-positioned as a trial judge to assess the evidence at issue."). We will affirm the district court's grant of summary judgment to UPS only if UPS has demonstrated in view of all the facts—and the reasonable inferences drawn therefrom in the light most favorable to Local 61, the nonmoving party—that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see*

*also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Local 61 appeals the grant of summary judgment to UPS on three grounds.

First, Local 61 argues that the district court had the "broad authority" and even the duty to "scrutinize strictly" the Committee's January 20 decision to proceed because that decision was substantive, not procedural, and because it "seriously undermined the integrity of the arbitral process." Br. of Appellant at 17. We reject this contention.

■■■■ It is well-settled that "the courts play only a limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). Indeed, we "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id.; see also United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960) ("The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."). We have repeatedly recognized that "judicial review of arbitral awards is extremely limited" and that we "do not sit to hear claims of factual or legal error by an arbitrator as [we would] in reviewing decisions of lower courts." *Kanuth v. Prescott, Ball & Turben, Inc.,* 949 F.2d 1175, 1178 (D.C.Cir.1991) (quoting *Misco,* 484 U.S. at 38, 108 S.Ct. at 370). The United States Supreme Court recently reaffirmed these general principles, holding that "if an arbitrator is even *arguably* construing or applying the contract and acting within the

scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, ——, 121 S.Ct. 1724, 1728, 149 L.Ed.2d 740 (2001) (per curiam) (internal quotations omitted) (emphasis added). Judicial deference to an arbitrator is broader still if the arbitrator's decision is a procedural one. *See John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). In *Wiley,* the Court made clear that procedural questions include such issues as "whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate." *Id.* at 557, 84 S.Ct. at 918; *see Denhardt v. Trailways, Inc.,* 767 F.2d 687, 690 (10th Cir.1985) (quoting *Wiley,* 376 U.S. at 557, 84 S.Ct. at 918); *see also McKesson Corp. v. Local 150 IBT,* 969 F.2d 831, 834 (9th Cir.1992) (question of limitations on time in which arbitrator may render decision is procedural); *Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers et al., Local Union No. 744 v. Metro. Distribs., Inc.,* 763 F.2d 300, 303 (7th Cir.1985) (issues of waiver and timeliness of filing are procedural under *Wiley*).

■■■ As the district court observed, there is no dispute that a quorum existed at the outset of the January 20 hearing during which the Committee decided to proceed to the merits. *See* JA 252; *see also* Oral Arg. Tr. at 4 (Local 61· stating that "[a]t the beginning of the hearing, all three members of each side were present and the neutral arbitrator was present"). Neither the collective bargaining agreements nor the Committee's Rules of Procedure (Committee Rules)² clearly address

---

2. Pursuant to an agreement between "[t]he Local Unions party to the Atlantic Area Supplement" and UPS, the Rules of Procedure "implement the provisions set forth in the

the question whether the union members' *subsequent* walkout prevented a quorum. True, the Committee Rules provide that the Committee "shall be composed of members or alternates representing the [u]nion and members or alternates representing the [e]mployer." Committee Rules, Article II, section 2. And they provide that each Committee "shall consist" of an equal number of management and union members. Committee Rules, Article IV, section 2; *see also* Supplement, Article 49, section 2(e). But these provisions might simply require the presence of an equal number of management and union members at the *commencement* of any particular Committee hearing.

Whether the provisions require an equal number of management and union Committee members *at the time of voting* and whether the union members' walkout prevented further proceedings—that is, "whether [these] grievance procedures or some part of them apply to [Thompson's discharge arbitration], whether such procedures have been followed or excused [here], or whether the unexcused failure to follow them avoids the [union's] duty to arbitrate," *Wiley*, 376 U.S. at 557, 84 S.Ct. at 918—are procedural questions. It is likely that one reason the parties bargained for a neutral arbitrator in the first place was to provide a vehicle for resolving on a case-by-case basis these very questions—ones the collective bargaining agreements left unclear but ones that still "grow out of the dispute and bear on its final disposition." *Id.* at 557, 84 S.Ct. at 918 ("Questions concerning the procedural

prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it."). Given the special deference we owe the arbitrator on procedural matters, *see id.* at 557, 84 S.Ct. at 918, we cannot say that his January 20 decision to go forward in spite of the union members' walkout was in error.

■ Moreover, even if the arbitrator's decision to proceed *were* substantive,[3] as Local 61 contends, the holding in *Garvey* would still counsel deference. It is at least "arguabl[e]" under the *Garvey* standard that because there was a quorum at the beginning of the January 20 session, any quorum requirement that existed was met. As the district court put it:

> If an arbitration [decision] ... draws its essence from the collective bargaining agreement, the Court will uphold the [decision].... Article 7 of the National Master Agreement states that "The [u]nion agrees it will not unreasonably delay the processing of [discharge] cases." ... The arbitrator's decision to go forward after repeated and unexplained departures by the [u]nion [Committee] members is consistent with this provision of the collective bargaining agreement.

JA 254 (citations omitted).

Like the district court, we conclude that the arbitrator was "within the scope of his authority," *Garvey*, 532 U.S. at ——, 121 S.Ct. at 1728, in first declaring and then breaking the deadlock on January 20.

---

grievance procedure of the Atlantic Area Supplement," although nothing contained in the Rules "shall in any way be deemed to alter or amend the procedures set forth in such Supplement." JA 108 (Committee Rules, Article I).

**3.** Local 61 asserts that "substantive" questions include "whether non-parties to the con-

tract may be compelled to arbitrate a dispute" and whether "fundamental procedural irregularities [have tainted] the arbitration proceeding." Br. of Appellant at 19 (citations omitted). It cites no authority, however, for its proposition that a quorum *vel non* is a "substantive" issue. *See id.*

Contrary to Local 61's contentions, the arbitrator is "more suited than the courts to interpret [the NMA] and to resolve contractual problems which occur between labor and management." *Teamsters Local 623 v. UPS, Inc.*, 786 F.Supp. 509, 511 (E.D.Pa.1992); *see United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) (arbitrator "is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment"). Consistent with this principle, the district court recognized that "[t]he party seeking to vacate an arbitration award," here Local 61, "faces a 'steep upward grade.'" JA 251 (quoting *Local 2094, American Fed'n of State, County & Mun. Employees v. Howard Univ. Hosp.*, 996 F.Supp. 61, 65 (D.D.C.1998)).[4]

Local 61 is mistaken in its assertion that the union Committee members' conduct in absenting themselves constituted misconduct that serves as a basis for vacating the Committee's decision to proceed. Local 61 did not challenge the union Committee members' conduct at any time before this appeal. Here, Local 61 alleges for the first time that the union members' alleged misconduct in walking out should be attributed to the Committee as a whole. Because this argument was not raised in the district court, it is not properly before this court. *See United States v. Wider*, 951 F.2d 1283, 1287 (D.C.Cir.1991) (adhering to "general rule ... that a federal appellate court does not consider an issue not passed upon below") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)).

More importantly, if we were to accept this argument, the practical result would be perverse at best—whenever union members believed a grievant's discharge was wrongful, they could simply refuse to participate in the arbitration, claim the Committee was "biased" and by default the grievant would retain his job with pay. *See* NMA Article 7. This is not the arbitration procedure for which UPS bargained. Article 7 prevents both sides from derailing the arbitration process. Under that provision, UPS agreed to allow the discharged employee to remain on the job, without loss of pay, "unless and until the discharge or suspension is sustained under the grievance procedure" and, in return, the union agreed that it "will not unreasonably delay the processing of [discharge] cases." *Id.* We decline to deny UPS the benefit of its bargain by holding that the union Committee members' tactics provide a basis for vacating the Committee's January 20 decision to proceed.

■ Local 61's second ground of appeal is that the district court committed reversible error in failing to scrutinize the Committee's January 20 decision to proceed under a narrow "public policy" exception that denies enforcement of an arbitration award if it "violates established law or seeks to compel some unlawful action." *Am. Postal Workers Union, AFL–CIO v. United States Postal Serv.*, 789 F.2d 1, 8 (D.C.Cir.1986) (citing *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983)). The claim is without merit.

■ We have explained that the public policy exception to the enforceability of an arbitration award "is *extremely narrow*[,]

---

4. Moreover, Local 61 does not, and cannot, dispute the district court's finding that the vote to proceed caused it no harm because the arbitrator decided to count the union Committee members' absence as three votes to uphold Local 61's point of order. *See* JA 253.

... [and] applies only when the public policy emanates from clear statutory or case law, *not from general considerations of supposed public interests.*" *Id.* (internal quotations omitted) (emphasis in original). Local 61 cites no statutory authority or case law supporting its proposition that a quorum is required as a matter of public policy. It correctly observes that "[n]ational labor policy concerning arbitration awards flows from the statutory principle that '[f]inal adjustment by a method agreed upon by the parties is ... the desirable method for settlement of grievance disputes.'" Br. of Appellant at 16 (quoting 29 U.S.C. § 173(d)). That principle, however, supports UPS's position, not Local 61's—the parties accepted an arbitration method under which procedural conflicts are to be resolved by an arbitrator, *see Wiley*, 376 U.S. at 557, 84 S.Ct. at 918, and agreed that neither side would derail the resolution of discharge cases, *see* NMA Article 7. Accordingly, we conclude that the district court properly deferred to the Committee's January 20 decision to proceed to the merits of Thompson's grievance.

■■■ Local 61's third challenge goes to the Committee's February 16 merits decision to uphold Thompson's discharge. The union asserts, simply, that a merits decision made in the absence of a quorum is void *per se*. This claim can be disposed of in short order.

Neither the NMA nor the Supplement nor any of the Committee Rules uses the word "quorum." As we mentioned, the Supplement and Rules do state that each monthly Committee is to consist of an equal number of management and union members. *See* Supplement, Article 49, section 2(e); Committee Rules, Article IV, section 2. Nevertheless, it is at least "arguabl[e]" under *Garvey* deference that whatever "quorum" requirement the Supplement and Rules may impose was met when all five Committee members were present at the commencement of the February 16 proceeding. Moreover, Article 7 of the NMA at least suggests that Committee action in the absence of a quorum is appropriate if union Committee members "unreasonably delay the processing" of a discharge case by subsequently boycotting the proceeding.[5]

For the foregoing reasons, the district court's grant of summary judgment to UPS is

*Affirmed.*

---

**5.** The only support Local 61 can muster for its claim is Robert's Rules of Order, which state that "[i]n the absence of a quorum, any business transacted ... is null and void." Robert's Rules of Order, Newly Revised 341 (9th ed.1990). These, of course, are no support at all. The parties' collective bargaining agreements (and the arbitrator's interpretations thereof) determine Committee procedure. Nowhere do the agreements or the Committee Rules (or the arbitrator's interpretations thereof) suggest that Robert's Rules apply. Therefore, like the district court, we are unpersuaded by Local 61's "analogy between the proceedings before the [Committee] and proceedings before Congress." JA 255.