# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 21, 2009          Decided July 10, 2009

No. 08-7092

VERIZON WASHINGTON, D.C. INC.,
APPELLEE

v.

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, AS
DESIGNATED AGENT AND REPRESENTATIVE FOR LOCAL 2336,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01460-PLF)

*Stephen M. Koslow* argued the cause for the appellant. *James B. Coppess* was on brief.

*Julia M. Broas* argued the cause for the appellee. *R. Scott Medsker* and *Willis J. Goldsmith* were on brief. *Jacqueline M. Holmes* entered an appearance.

Before: HENDERSON, ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Separate concurring statement filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: The Communications Workers of America, AFL-CIO (CWA) appeals from the district court's order granting summary judgment to Verizon Washington, D.C. Inc. (Verizon), vacating and remanding an arbitration award. *Verizon Washington, D.C. Inc. v. Commc'ns Workers of Am.*, 569 F. Supp. 2d 121, 129 (D.D.C. 2008). Because we conclude that the arbitration award "draws its essence from the collective bargaining agreement," *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (citation and quotation marks omitted), we reverse.

**I.**

Sometime in 1997, Verizon began to assign its Corporate Voice Mail Group employees (Voice Mail Clerks) additional duties. For a time, Verizon paid the Voice Mail Clerks extra for performing the new duties but stopped doing so at some point between 1998 and 2000. On December 9, 2001, the CWA filed a grievance on behalf of the Voice Mail Clerks, asserting that they were being unfairly treated in that they were performing the duties associated with a higher position (RCMAC Clerk) but were classified at, and paid the salary of, a lower position (General Clerk).[1] On March 6, 2002, Verizon denied the

---

[1]A General Clerk is responsible for "the handling of orders and preparation of reports, accessing multiple systems for inputting retrieval of data on a computer, and heavy client interfacing at all levels of management[.]" Opinion and Award of Arbitrator Susan T. Mackenzie, *Commc'ns Workers of Am., Local 2336 v. Verizon Washington, D.C. Inc.*, CWA Case No. 2-04-21, at 8 (Feb. 28, 2006) (quotations omitted) (Mackenzie Award). An RCMAC Clerk, on the other hand, must "translat[e] . . . complex codes in switches . . . [,] ensure that the changes made in one service do not affect other services, [and] engage in time-sensitive projects and coordinating work." *Id.* at 10. The General Clerk position is "semi-skilled" while

grievance and the CWA appealed. During the grievance process, Verizon conducted a job evaluation of the Voice Mail Clerks and eventually, on June 2, 2003, determined that the Voice Mail Clerk position was appropriately classified as a General Clerk position. On July 28, 2003, the CWA submitted its grievance to arbitration pursuant to Article 13 of the collective bargaining agreement between Verizon and the CWA. *See* General Agreement Between CWA and Verizon, Inc. at 18-19 (Aug. 3, 2003) (CBA).

The dispute centers on Article 16B of the CBA, which sets forth the procedure Verizon and the CWA must follow "[w]henever the Company determines it appropriate to create a new job title or job classification in the bargaining unit, or to restructure or redefine an existing one." CBA at 24. The procedure is "the exclusive means by which [the CWA] may contest the schedule of wage rates which [Verizon] sets for any new, restructured, or redefined job title or classification." *Id.* at 25. Section 1(e) of Article 16B allows the CWA to demand, "if the parties are unable to reach agreement within sixty (60) days following receipt of notice from [Verizon],"[2] "that the issue of an appropriate schedule of wage rates be submitted for

_____

the RCMAC Clerk position is "technical." Opinion and Award of Arbitrator Paul F. Gerhart, *Verizon Washington, D.C. Inc. v. Commc'ns Workers of Am., Local 2336*, Parties' Case No. 2001-91650, at 6 (May 30, 2007) (Gerhart Award).

[2]Article 16B.1(a) of the CBA requires Verizon to "notify the Union in writing of [a new] job title or classification and . . . furnish a job description of the duties and the wage rates and schedules initially determined for such job titles and classifications. . . . Following such notice to the [CWA], [Verizon] may proceed to staff such job titles or classifications." CBA at 24. Article 16B.1(b) gives the CWA, once notified, the right to "initiate negotiations concerning the initial wage rates or schedules established by [Verizon]." *Id.*

resolution to a neutral third party," that is, an arbitrator. *Id.* Significantly, if the arbitrator devises a different schedule of wage rates, "the new schedule shall be placed in effect retroactive to the date the change or new job was implemented, except that in no event shall the retroactive effect exceed 150 days." *Id.* The parties are bound by the arbitrator's decision.

After arbitration hearings were held on April 1, 2005, July 14, 2005 and October 20, 2005, an arbitrator issued an award on February 28, 2006, concluding that Verizon "violate[d] Article 16.B by failing to give notice to [the CWA] and afford an opportunity to negotiate over its assignment of duties to Voice Mail Clerks outside of the scope of their General Clerk Job Description, constituting a redefinition or restructure of the existing job title for purposes of Article 16.B." Opinion and Award of Arbitrator Susan T. Mackenzie, *Commc'ns Workers of Am., Local 2336 v. Verizon Washington, D.C. Inc.*, CWA Case No. 2-04-21, at 12 (Feb. 28, 2006) (Mackenzie Award). Accordingly, the arbitrator directed Verizon to comply with Article 16B's notification and negotiations requirements within 60 days of the issuance of her award. *Id.* at 13.

Pursuant to the award, Verizon and the CWA began negotiations but soon reached an impasse. The CWA, invoking its right to "demand that the issue of an appropriate schedule of wage rates be submitted for resolution to a neutral third party," CBA at 25, then requested arbitration at some point before August 9, 2006. Another arbitrator heard the matter on September 15, 2006 and issued his award eight months later, on May 30, 2007.[3] The arbitrator summarized the three issues as

---

[3]Article 16B.1(f) provides in part:

> At the request of either party, a hearing shall be held to receive . . . evidence. Any such hearing shall be held within thirty (30) days after the matter is referred to the

5

follows:

1. The threshold issue before the arbitrator is to determine what discretion the Agreement affords him in fashioning an award in this matter. That is, is the arbitrator constrained to choose between the positions of the parties as in "last offer" arbitration, or is he free to identify and award some other outcome in the matter?

2. The principal issue before the arbitrator is, of course, to determine an award with respect to the appropriate wage schedule for the Voice Mail Clerks.

3. Finally, the arbitrator must determine a remedy. This will require the arbitrator to interpret the language of Article 16B.1(f) which states that "in no event shall the retroactive effect exceed 150 days." Did the drafters of the Agreement intend, as the Company contends, that the new wage rate for the Voice Mail Clerks must be effective no more than 150 days prior to the date of the instant arbitrator's award, or, *pursuant to the Union's interpretation,* that the revised wage rate must have effect 150 days prior to [sic][4] the Union's initial grievance, i.e.,

neutral third party. . . . A written decision as to the appropriate schedule of wage rates will be rendered by the neutral third party *within sixty (60) days* of the date that the matter is referred for resolution. . . .

CBA at 25 (emphasis added).

[4]The arbitrator misstated the CWA's interpretation here. December 9, 2001 is the date on which the CWA filed its initial grievance, *see* Mackenzie Award at 4; Gerhart Award at 17, and the CWA argued that it is to this date that the retroactivity award should

December 9, 2001?

Opinion and Award of Arbitrator Paul F. Gerhart, *Verizon Washington, D.C. Inc. v. Commc'ns Workers of Am., Local 2336*, Parties' Case No. 2001-91650, at 38-39 (May 30, 2007) (emphasis added) (Gerhart Award). The arbitrator determined that after two years of service, a Voice Mail Clerk should be "allowed to apply for and immediately be promoted to the Senior Voice Mail Clerk job title." *Id.* at 54. He also held that "[a]ll current Voice Mail Clerks with two or more years of actual service in that title shall immediately be offered the opportunity to upgrade to the Senior Voice Mail Clerk job" and that any Voice Mail Clerk with two or more years of actual service as of December 9, 2001 "shall receive a pay adjustment reflecting the difference between what she (or he) actually earned and what she would have earned had she been properly classified as of that date." *Id.* at 57 (emphasis omitted). In setting the retroactivity award, the arbitrator reasoned as follows:

> . . . Inasmuch as the upgrade of experienced Voice Mail Clerks should have taken place in 2001, the effective date of the creation of the Senior Voice Mail job title shall be December 9, 2001, the date of the Union's grievance in this matter. . . .
>
> The arbitrator is mindful of the admonition in Article 16B.1(f) which asserts that "in no event shall the retroactive effect exceed 150 days." Had [Verizon] not violated the Agreement as found by Arbitrator Mackenzie, and had [it] properly notified [the CWA] of

reach back, *see* Gerhart Award at 17. The error is simply a scrivener's error, however, because the arbitrator correctly implemented the CWA's interpretation in spelling out his remedy. *See infra* pp. 12-14.

the changes in the Voice Mail Clerk job in response to [the CWA's] December 2001 grievance, and had the matter been processed and ultimately referred to a "neutral third party" as required by Article 16B.1(e) and (f), a decision by the neutral third party would have been rendered on or about May 9, 2002 which is 150 days after December 9, 2001.[5]  Thus, in the absence of the contractual violation by [Verizon], this neutral third party award would have been effective on December 9, 2001, fully within the boundaries of retroactivity prescribed by the [CBA].  It would shock the sensibilities of any reasonable person if [Verizon] were allowed to benefit from its own bre[a]ch of the [CBA], as found by Arbitrator Mackenzie, particularly since it violated the very Article of the [CBA] that it now seeks to use to limit the contractually agreed-upon remedy in this matter.

*Id.* at 55-56.

On August 13, 2007, Verizon filed suit in district court under section 301(a) of the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a), seeking partial vacatur of the award to the extent the retroactive pay award exceeded 150

---

[5]Although the arbitrator did not specify how he settled on the 150-day time period between the CWA's December 9, 2001 grievance and the hypothetical May 9, 2002 award, it appears that he relied on the timetable set out in the CBA.  Under the CBA, the CWA has 60 days from Verizon's initial notice of the creation, restructuring or redefinition of a job title or classification in which to negotiate and reach agreement. CBA at 25.  If no agreement is reached, the CWA has an additional 30 days to demand arbitration. *Id.*  The arbitrator has 60 days from the date the matter is referred for resolution to issue his award. *Id.*; *see supra* note 3.  Added together, 150 days from the date of the CWA's grievance is May 9, 2002.

days.[6]  The CWA counterclaimed seeking enforcement.  On August 5, 2008, the district court granted summary judgment to Verizon, holding that "Arbitrator Gerhart exceeded his arbitral authority under the parties' agreement" in that "he chose to disregard the unambiguous limitations of Article 16B.1(f)—a limitation that he characterized as a mere 'admonition'—because he concluded that it would be unfair to observe that limitation in this case." *Verizon Washington, D.C. Inc.*, 569 F. Supp. 2d at 127.  Indeed, highlighting the arbitrator's "shock the sensibilities" language, the court concluded that the arbitrator's retroactivity determination "was based on 'his own brand of industrial justice.'"  *Id.* at 128 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).  The CWA then filed a timely notice of appeal.

## II.

We have "final order" jurisdiction of this appeal under 28 U.S.C. § 1291 ("courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States").  Despite remanding the matter to an "arbitrator of the parties' choosing," the district court order is a final, appealable order given that the remand—limited to modifying the retroactive effect of the award "in a manner consistent with . . . [the court's] Opinion," that is, retroactive to 150 days before the date of the arbitrator's award—is ministerial in nature.  *See Verizon Washington, D.C. Inc.*, 569 F. Supp. 2d at 129; *Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 881 (D.C. Cir. 2000)

---

[6]Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

("[R]emand orders may be considered final where a court remands for solely 'ministerial' proceedings. . . ."); *cf. Jays Foods, L.L.C. v. Chem. & Allied Prod. Workers Union, Local 20*, 208 F.3d 610, 612 (7th Cir. 2000) ("'*Provided that the matter left for determination is not merely ministerial*, . . . an order that does not determine the entire substantive relief to which the plaintiff is entitled is not a final decision . . . .'") (quoting *Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am.*, 909 F.2d 248, 249 (7th Cir. 1990)) (emphasis added).[7]   Our review of the district court's grant of summary judgment is *de novo*.  *USPS v. Am. Postal Workers Union*, 553 F.3d 686, 692 (D.C. Cir. 2009).

The CWA contends that under United States Supreme Court precedent as well as our own, the district court erred in concluding that the arbitrator's award did not "'draw[] its essence' from the terms of the collective bargaining agreement." *Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 720 (D.C. Cir. 2008) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)) (alteration in *Howard Univ.*).   The arbitrator, the CWA continues, plainly satisfied this standard when he determined that the award should apply retroactively to December 9, 2001—the date the CWA grievance was filed—because the arbitrator adopted the CWA's interpretation of the 150-day limit.  Br. of Appellant at 19-23.  Noting that but for Verizon's breach of the CBA's notice/negotiations requirements, the Voice Mail Clerks' wage rate would have been determined 150 days

---

[7]Relying on *Jay's Foods, supra*, the CWA asserts that our subject matter jurisdiction comes from the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(E), which provides that "[a]n appeal may be taken from . . . an order . . . modifying, correcting, or vacating an [arbitral] award." Br. of Appellant at 1-2.  Verizon's suit was brought under section 301 of the LMRA, however, and, accordingly, we do not reach the applicability *vel non* of the FAA.

after the December 9, 2001 grievance was filed, the arbitrator agreed with the CWA that Verizon should not benefit from its breach. *Id.* at 20-21. According to the CWA, the notification/negotiations requirements set forth in Article 16B of the CBA were conditions precedent—with which both parties were obligated to comply—to the Voice Mail Clerks' assumption of additional duties, making any back pay remedy retroactive to the date they assumed the additional duties.[8] Having prevented the CWA from pursuing the grievance process in a timely manner because of its failure to notify/negotiate, Verizon should not reap the benefit of interpreting the 150-day retroactivity limit literally to reach back only to December 31, 2006 (150 days before the date of the arbitrator's award). Thus, the CWA submits, the district court erred by "substituting its interpretation of the parties' agreement for the Arbitrator's." *Id.* at 27.

We "may vacate a labor arbitration award only if it does not 'draw[] its essence' from the terms of the collective bargaining agreement." *Howard Univ.*, 512 F.3d at 720 (quoting *Enter. Wheel & Car Corp.*, 363 U.S. at 597). We therefore "'play only a limited role when asked to review the decision of an arbitrator.'" *Teamsters Local Union No. 61 v. UPS, Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). Indeed, "'[w]hile courts . . . may review the substance of an arbitration award, only the narrowest circumstances will justify setting the award aside. An arbitrator cannot, for instance . . . ignore the contract and dispense his own brand of industrial justice. But if

---

[8]See also section 1(d) of Article 16B, which provides "[i]f agreement is reached between the parties within the sixty (60) days following the Union's receipt of notice from [Verizon] concerning the initial wage rates and schedules, the agreed upon wage rates and schedules shall be retroactive to the date the change or new job was implemented." CBA at 25.

an arbitrator was *arguably* construing or applying the contract, a court must defer to the arbitrator's judgment.'" *Howard Univ.*, 512 F.3d at 720 (quoting *Madison Hotel v. Hotel & Rest. Employees, Local 25*, 144 F.3d 855, 858-59 (D.C. Cir. 1998) (en banc) (citations and internal quotation marks omitted and emphasis added)). Moreover, an arbitrator need not be "'confined to the express provisions of the contract'" when issuing his award but may also consider "the structure of the contract as a whole." *Madison Hotel*, 144 F.3d at 859 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960)). As the Supreme Court declared in *Misco, Inc.*,

> To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

484 U.S. at 38.[9]

---

[9]*Cf. Grand Rapids Die Casting Corp. v. Local Union No. 159, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 684 F.2d 413, 415 (6th Cir. 1982) (Sixth Circuit held arbitrator exceeded his authority by ignoring relevant contractual provisions because he found them so "offensive" as to "shock[] [his] conscience."); s*ee also Anheuser-Busch, Inc. v. Int'l Bhd. of*

Read in its entirety, the arbitrator's opinion and award manifests that he accepted the CWA's interpretation of Article 16B.1(f) in concluding that December 9, 2001, the date the CWA filed its grievance, was the "effective date of the creation of the Senior Voice Mail job title." Gerhart Award at 55; *see also* Br. of Appellant at 20-21. In fact, the CWA's interpretation drew its essence from the CBA. But regardless whether it did, the arbitrator's decision did. While the arbitrator recognized his duty to "interpret the language of Article 16B.1(f) which states that 'in no event shall the retroactive effect exceed 150 days,'" he then had to determine whether "as [Verizon] contends, . . . the new wage rate for the Voice Mail Clerks must be effective no more than 150 days prior to the date of the instant arbitrator's award, or, pursuant to [the CWA's] interpretation, . . . the revised wage rate must have effect 150 days prior to [sic] the Union's initial grievance, i.e., December 9, 2001." Gerhart Award at 38-39. In setting the December 9, 2001 date, then, the arbitrator interpreted the collective bargaining agreement as the CWA did—namely, that the 150-day retroactivity provision must be read in view of Verizon's failure to give notice under Article 16B.1(a) of the CBA. Gerhart Award at 17-18. So read, the 150-day retroactivity provision correlates to the period the arbitration process is to take once proper notice is given.[10] Furthermore, interpreting Article 16B.1(f) in light of the "structure of the contract as a whole," *Madison Hotel*, 144 F. 3d

---

*Teamsters, Local Union No. 744*, 280 F.3d 1133, 1138 (7th Cir. 2002) ("arbitrator cannot shield himself from judicial correction by merely 'making noises of contract interpretation'" (quoting *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 187 (7th Cir. 1985)) (emphasis omitted).

[10]*See supra* note 5, showing the 150-day calculation between the time of notice under Article 16B.1(a) and the issuance of an arbitration award under Article 16B.1(f).

at 859—including the CBA's notice provision—is within the arbitrator's authority, *see id.* Therefore we cannot say that the arbitrator was not "arguably construing or applying the contract and acting within the scope of his authority." *Misco*, 484 U.S. at 38.

Finally, the arbitrator included a hypothetical calculation that "[had Verizon] not violated the Agreement as found by Arbitrator Mackenzie, and had [Verizon] properly notified [the CWA] of the changes in the Voice Mail Clerk job in response to the [] December 2001 grievance, and had the matter been processed and ultimately referred to a 'neutral third party' as required by Article 16B.1(e) and (f), a decision by the neutral third party would have been rendered on or about May 9, 2002 which is 150 days after December 9, 2001." Gerhart Award at 55. In fact, the grievance process took from late 2001 until May 30, 2007 and the second arbitrator alone took over eight months to issue his award notwithstanding the CBA's requirement that any arbitration award issue "within sixty . . . days of the date that the matter is referred for resolution." CBA at 25. Even were we to conclude that his calculation was a "serious error," *Misco*, 484 U.S. at 38, our conclusion would not allow us to vacate the reward. Indeed, "[t]he 'parties having authorized the arbitrator to give meaning to the language of the agreement,' courts cannot 'reject [the] award on the ground that the arbitrator misread the contract.'" *Madison Hotel*, 144 F.3d at 859 (quoting *Misco*, 484 U.S. at 38). The arbitrator constructed a time line consistent with Article 16B.1(f) of the CBA. Accordingly, we uphold the award and reverse the district court's grant of summary judgment to Verizon.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring:

I write separately to state that for me reversal is tied to the fact that the arbitrator adopted the CWA's interpretation of Article 16B.1(f), which interpretation is itself grounded in Article 16B of the collective bargaining agreement. Although—following the Supreme Court's lead—we apply a largely "hands off" standard of review to an arbitral award, that does not mean *anything* goes, as even the CWA counsel recognized:

> Q: . . . . What if he had not felt confined by the 150 days—the Union had taken a different position or said take it all the way back to the first day we got these additional duties. Would that be enough to say he had exceeded his authority?
>
> Coslow: If he imposed a remedy that didn't have reference to the 150 days and its relationship to notice, I think the Company's argument would be much stronger. But he anchored it in the notice requirement, in the 150 days, in the Company's breach. Those are all appropriate considerations in interpretation.
>
> Q: . . . Let me ask you one [other thing]. Have you given us an example [] in this case [of] what would have exceeded his authority?
>
> Coslow: Well I suppose . . . I think you've presented one and that is suppose he said, well I am going to, arbitrarily, because I think it's fair . . . I'm just [going to] grant these employees this amount of money just [be]cause I think they should have it. That, I think we'd all say oh that's over the top. But he didn't do that . . . .

Oral Argument Recording, *Verizon Washington, D.C. Inc. v. Commc'ns Workers of Am.*, No. 08-7092, at 49:49-51:08 (argued Apr. 21, 2009).